UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FERRO, M.D., | Case No. 1:22-cv-00885 JLT CDB |
| Plaintiff, | ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | (Doc. 6) |
| SAFECO INSURANCE COMPANY OF AMERICA, et al., | |
| Defendants. | |

### I.   BACKGROUND

Dr. Thomas Ferro filed this lawsuit in Kern County Superior Court alleging that Defendant, Safeco Insurance Company of America, violated the covenant of good faith and fair dealing in its handling of a claim made on the underinsured motorist benefit provision within the automobile policy issued to Dr. Ferro by Defendant (UIM Policy). (Doc. 1 at 16–29 (Compl.).) Defendant removed the case to this Court based on diversity jurisdiction. (*Id.* at 3–4.)

The relevant facts are straightforward and undisputed. On January 17, 2017, Dr. Ferro was driving westbound on Route 166 in Bakersfield, California, following a Pontiac at approximately 55 mph. (Compl., ¶ 6.) The Pontiac drifted into oncoming traffic, colliding head-on with a semi-truck. (Compl., ¶ 6.) The semi-truck then crossed over the center line into Dr. Ferro's lane, hitting his vehicle head-on. (*Id.*) Plaintiff's vehicle spun out and the airbag deployed. (*Id.*) Dr. Ferro's vehicle was significantly damaged, and he sustained injuries to his neck, back, and wrists. (*Id.*, ¶

1

1  8.)

2  Plaintiff pursued a personal injury claim against the driver of the Pontiac, ultimately
3  settling that claim for the $100,000 liability limit of that driver's automobile policy. (Compl., ¶
4  14.) Plaintiff then filed a claim with Safeco, demanding payment of the $400,000 limit under the
5  UIM Policy. (*Id*.) Safeco refused to meet that demand. (*See id*.) Dr. Ferro then sent Safeco a
6  demand for arbitration. (*Id*. at ¶ 15.)

7  In arbitration, Dr. Ferro asserted that the accident caused him nearly $4 million in
8  damages, including more than $3 million in lost earnings. (Compl., ¶ 17, Ex. D.) Following a
9  one-day hearing, the arbitrator ultimately determined that Plaintiff's total damages were
10 $1,075,742.90 ($950,742 in lost earning capacity, and $125,000 for past and future general
11 damages). (*Id*.) The arbitrator awarded Plaintiff $400,000 under the UIM Policy (*id*.), which
12 Safeco paid on August 12, 2020. (*Id*., ¶ 18.)

13 Plaintiff's complaint alleges that Safeco unreasonably delayed payment under the UIM
14 Policy by, among other things, misrepresenting relevant facts or insurance policy provisions,
15 failing to act promptly on the claim and/or investigate the claim, failing to accept or deny
16 coverage within a reasonable time, failing to reach a prompt settlement of the claim after liability
17 became reasonably clear, ignoring or failing to reasonably consider evidence submitted to support
18 the value of the claim, and failing to provide a reasonable basis for denying the claim. (Compl.,
19 ¶ 23.)

20 Defendant has moved for judgment on the pleadings, arguing that under *Rappaport-Scott*
21 *v. Interinsurance Exchange of the Automobile Club*, 146 Cal. App. 4th 831, 837 (2007), the
22 discrepancy between the claim Plaintiff presented to the arbitrator and the arbitrator's ultimate
23 damages determination warrants judgment as a matter of law. (Doc. 6.) Plaintiff opposes the
24 motion (Doc. 9), and Defendant filed a reply. (Doc. 11.) For the reasons set forth below, the Court
25 **DENIES** the motion.

26　　　　　　　　　　　　　**II.    STANDARD OF DECISION**

27 Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may seek judgment
28 on the pleadings "[a]fter the pleadings are closed—but early enough to not delay trial." Fed. R.

Civ. P. 12(c). The Ninth Circuit explained that "pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). The pleadings are closed in this action.

A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), *aff'd* 277 Fed. Appx. 734 (9th Cir. 2008). Indeed, the Ninth Circuit explained a motion pursuant to Rule 12(c) is "functionally identical" to a motion under Rule 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1192 (9th Cir. 1989) ("[t]he principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing"). Consequently, "the same standard of review" applies to a Rule 12(c) motion. *Chandavong v. Fresno Deputy Sheriff's Assoc.*, 599 F. Supp. 3d 1017, 1020 (E.D. Cal. 2022) (citing *Gregg v. Dep't of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017)).

In deciding a motion for judgment on the pleadings, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (explaining the pleading standard under *Iqbal* applies to Rule 12(c) motions, because Rule 12(b) and Rule 12(c) motions are functionally equivalent). Thus, the Court "must accept all factual allegations in the [pleadings] as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint, or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013). To prevail on a Rule 12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.

1984).

### III. DISCUSSION

Defendant takes pains to make it very clear that the only argument it is presenting in the pending motion is that, under *Rappaport-Scott*, the disparity between Plaintiff's claimed damages and the arbitration award entitles Defendant to judgment as a matter of law on Plaintiff's sole claim for breach of the covenant of good faith and fair dealing. (*See* Doc. 11 at 3.)

A covenant of good faith and fair dealing is implied in every insurance contract under California law. *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 214 (1986). To adequately plead a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: "(1) benefits under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Mudpie Inc. v. Travelers Cas. Ins. Co.*, 15 F.4th 885 893 n.6 (9th Cir. 2021) (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)). "The mistaken or erroneous withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability." *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins.* Co., 90 Cal. App. 4th 335, 346 (2001) (internal quotation omitted). An insurer does not act in bad faith so long as a "genuine dispute" exists over an insured's coverage. *See Rappaport-Scott*, 146 Cal. App. 4th at 837.

The Defense is correct that a "genuine dispute" can be established where there is a disparity between the amount of damages initially claimed by the insured and the amount an arbitrator eventually awards, even where the arbitrator awards a greater amount than the insurer offered to settle the claim. *See Rappaport-Scott*, 146 Cal. App. 4th at 839. That is exactly what happened in *Rappaport-Scott*, where the insured plaintiff sued her insurer for bad faith after the insurer rejected her settlement offer for a claim caused by an underinsured motorist. *Id*. at 833. Following the accident, the plaintiff settled her claim against the underinsured motorist for $25,000, the limit of that motorist's policy. *Id*. at 834. She then submitted a claim to her insurer and eventually demanded arbitration, asserting losses of $346,732.34, including $26,732.34 in medical expenses, $20,000 in future medical expenses, $150,000 in lost income, and $150,000 in general damages. *Id*. She made a settlement demand of her insurance company in the amount of

4

$75,000, representing the $100,000 limit of that policy less the $25,000 she already received from the other motorist. *Id*. Her insurer offered only $7,000. *Id*.

The arbitrator ultimately determined that the plaintiff suffered $15,000 in medical expenses, $3,000 for earnings losses, and $45,000 for pain, suffering and future medical care, for a total of $63,000. *Id*. The arbitrator reduced the award by the $25,000 the plaintiff received from the underinsured motorist and $5,000 for previously paid medical expenses and awarded the plaintiff $33,000. *Id*. The California Court of Appeal affirmed dismissal of the claim, finding that "the vast difference between the $346,732.34 in losses claimed by Rappaport–Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, as a matter of law, that a genuine dispute existed as to the amount payable on the claim. *Id*. at 839. Moreover, Rappaport–Scott did not "allege or assert any facts that would overcome the necessary inference from the facts she does allege that a genuine dispute existed." *Id*.; *see also Maynard v. State Farm Mut. Auto. Ins. Co*., 499 F. Supp. 2d 1154, 1161–62 (C.D. Cal. 2007) (following *Rappaport-Scott* when presented with "factually indistinguishable" circumstances).

Though there certainly are parallels between *Rappaport-Scott* and the present case, there is at least one important distinction: the arbitrator's ultimate damages determination of $1,075,742.90 was far above (more than double) the $400,000.00 limit of the UIM Policy. Defendant attempts to convince the Court that the existence of a significant disparity between the plaintiff's claimed damages and the arbitrator's damages determination is dispositive. (*See* Doc. 11 at 4.) It is true that the disparities cited in other cases are arguably less significant than the one here. *See, e.g., Maslo v. Ameriprise Auto & Home Ins*., 227 Cal. App. 4th 626, 629, 173 Cal. Rptr. 3d 854, 856 (2014), *as modified* (July 22, 2014) ($164,120.91 arbitration award after a claim seeking the $250,000 limit on the policy's uninsured motorist coverage). But it is also true that in all the cases identified by the Court that have applied *Rappaport-Scott* in the manner argued by Defendant, the arbitration award was <u>under the policy limit</u>. *See id*.; *see also Maynard*, 499 F. Supp. 2d at 1159 ($63,005 net arbitration award was under the $85,000 request made by Plaintiff (which was the $100,000 policy limit less $15,000 already paid by the other motorist's policy)); *Keshish v. Allstate Ins. Co*., 959 F. Supp. 2d 1226, 1238 (C.D. Cal. 2013) (finding no genuine

5

dispute where "the appraisal panel awarded substantially less than the amount of plaintiffs' claim" under the policy). This distinction is critical because goes to whether there was a "genuine" (i.e., material) dispute over the amount due under the policy in question. Where the arbitrator's ultimate damages determination far exceeds the policy limit, there may be evidence of some dispute over damages, but that disparity does not establish a material dispute for purposes of the insurer's obligations under the policy. Here, because the arbitrator's award was far higher than the amount Dr. Ferro actually demanded from Safeco, *Rappaport-Scott* is inapplicable, and the Defense motion fails.

## IV.   CONCLUSION

For the reasons set forth above, the motion for judgment on the pleadings (Doc. 6) is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 29, 2024**

_____
UNITED STATES DISTRICT JUDGE